OTIS ELEVATOR COMPANY *vs.* GEORGE B. LONG & others.

Suffolk.    December 9, 10, 1920. — April 1, 1921.

Present: RUGG, C. J., DE COURCY, PIERCE, & JENNEY, JJ.

*Mechanic's Lien. Public Work. Boston. Municipal Corporations,* Officers and agents. *Interest. Assignment.*

Where, in a suit under St. 1909, c. 514, § 23, by a subcontractor upon a public work to reach and apply, in satisfaction of a claim for labor performed and furnished and materials used, cash of the contractor held by the municipality, and to enforce a bond with surety furnished by the contractor, it appears from a master's report that certain work and materials outside those specified in the contract were ordered, in accordance with its provisions, to be done and furnished by the plaintiff and nothing in the master's report warrants a finding or an inference that such changes in the contract were outside of the character of the work contemplated by the contract or outside of the general character of the materials necessary for its execution and an inference to the contrary is strong, the provisions of St. 1890, c. 418, § 6, have not been violated and the contractor's surety is not relieved from liability.

The trustees of the Boston Public Library, and not the mayor of the city of Boston, are the officers or agents of the city with whom should be filed a sworn statement of a claim of a subcontractor under St. 1909, c. 514, § 23, for labor performed and furnished and materials used in the construction of an addition to the Boston Public Library being built under the provisions of a contract which was executed under St. 1890, c. 418, § 4, on behalf of the city by the trustees of the Boston Public Library, although by § 6 the mayor was required to approve the contract in writing.

A filing of a sworn statement of such a claim with the mayor alone would not be a compliance with St. 1909, c. 514, § 23.

In the suit above described, several subcontractors were permitted to intervene and file claims. The master did not find that any intervenor had a legal right to interest upon his claim because of any provision in his subcontract or because he demanded payment after the claim became due and payable and payment was refused, and nothing in the report warranted such an inference. *Held,* that the intervenors were entitled to interest only from the date of the filing of their respective petitions and not from the date of the filing of their respective sworn statements of claim under St. 1909, c. 514, § 23.

Subcontractors who, under St. 1909, c. 514, § 23, have properly filed sworn statements of claims for labor performed and furnished and materials used upon a public work, are entitled to priority, as against cash and security in the hands of the municipality under the statute, over a claim for money lent secured by an assignment made by the contractor of his claim under the contract before it was completed or abandoned by him.

Findings by the master in the suit above described that a note given by the main contractor to an intervening plaintiff was accepted by that plaintiff as a payment on account, which were affirmed by the judge upon exceptions to the

report, were also affirmed by this court after a careful examination of the facts reported by the master.

The requirements of St. 1909, c. 514, § 23, were *held* to have been satisfied in the circumstances above described by the mailing of a letter, postage prepaid, containing the sworn statement of the claim, which was addressed to and was received by the trustees of the Boston Public Library, or by the delivery of a letter, containing such sworn statement and addressed to the trustees of the Boston Public Library, to the clerk of that corporation; but it was *further held* that the mere mailing of such a letter, without it being found to have been delivered to the addressee, was not sufficient.

BILL IN EQUITY under St. 1909, c. 514, § 23, filed in the Superior Court on November 11, 1918, against George Baker Long, the city of Boston and the National Surety Company, to reach and apply, in satisfaction of a claim for labor performed or furnished and for materials used by the plaintiff as subcontractor under the defendant Long in the performance of the public work of building an addition to the Public Library building in Boston, cash and bond security held by the city in accordance with the provisions of the statute.

Thirty-five other subcontractors of Long were permitted to intervene for the purpose of presenting their claims.

The suit was referred to a master. The master's findings as to a claim of the National Bank of Worcester were as follows:

"The bank is a party defendant by amendment to the bill of the plaintiff, Otis Elevator Company. The bank furnished no labor or materials to Long, but it loaned $10,000 to him, for which it took a promissory note payable on demand, dated November 19, 1917. The bank took from Long as collateral security for the payment of the note assignments of balances due to Long on contracts with the City of Buffalo, the City of Boston and the State of New York. The assignment of the balance due to Long from the City of Boston was dated November 19, 1917, and was recorded in the office of the City Clerk of Boston on November 28, 1917. It states that the balance due from the city was $23,382.80. No payments on account of said note have been made to the bank."

Other material findings of the master are described in the opinion. Certain intervenors and the defendant surety company filed objections and exceptions to the report. The report, besides stating findings of fact, presented certain questions of law. The

suit then was heard upon the pleadings, the master's report and the exceptions thereto by *Wait*, J., who, on January 5, 1920, filed a memorandum of findings and rulings, and by his order an interlocutory decree was entered overruling the exceptions to the report and confirming the report. The suit afterwards was reserved for this court as stated in the opinion.

*J. E. McConnell*, for the National Surety Company.

*T. H. Mahoney*, for the Otis Elevator Company.

*F. L. Norton*, for Joseph P. O'Connell.

*L. K. Clark*, for the Coburn Trolley Track Manufacturing Company.

*J. F. Gadsby*, for the William B. Reardon Company.

*J. H. Hurley*, for the John T. Scully Foundation Company.

*W. M. Stockbridge*, for the Worcester Ornamental Iron Works.

*A. A. Schaefer*, for Waldo Brothers, Inc.

*C. H. Waterman*, for the H. W. Johns-Manville Company.

*J. Gordon*, for the Standard Plate Glass Company.

*M. H. Sullivan*, for the Merchants' National Bank of Worcester.

*W. J. Drew*, for the American Luxfer Prism Company; *H. N. Berry, C. C. Bucknam & C. J. Miller*, for the Daniels and Blomquist Company; *C. M. Thayer, F. C. Smith, Jr., & G. A. Gaskill*, for the Smith-Green Company; *R. E. Joslin*, for Frank E. Tingley and the Pittsburgh Plate Glass Company; and *J. Abbott*, for the New England Structural Company, submitted briefs.

PIERCE, J. This is a suit in equity brought by the Otis Elevator Company in its own behalf and upon the behalf of all creditors of George Baker Long, who performed or furnished labor or furnished materials used in the construction of an addition to the Public Library building located at 19 Blagden Street, in Boston, as hereinafter mentioned, and have filed a sworn statement of their claims as provided for by St. 1909, c. 514, § 23, who may care to join. The case is before this court on a reservation and report of a judge of the Superior Court, which reads as follows: "This case came on to be heard before me after the confirmation of the master's report, and at the request of the parties I reserve and report the case upon the pleadings, the master's report, the exceptions to the master's report, the interlocutory decree confirming the master's report, the memorandum of rulings and findings, and all questions of law for the consideration of the

Supreme Judicial Court, such decree to be entered as justice and equity may require."

After the filing of the bill thirty-five individual persons, firms or corporations were allowed to intervene.

The bill alleges that, on April 26, 1916, by an instrument in writing, a copy of which is annexed, a contract was executed by and between the city of Boston, by the trustees of the Public Library, and George Baker Long and that the contract was approved by the mayor on April 29, 1916. The master finds the foregoing allegations are true and further finds that a bond was duly executed by the defendant National Surety Company by its officers thereunto duly authorized, on April 26, 1916, in the following form:

"The undersigned surety company hereby binds itself, its successors and assigns, to pay to the City of Boston the sum of thirty-one thousand two hundred and fifty ($31,250) dollars.

"This obligation is upon the condition that if the party to the contract hereto annexed, other than the City, shall faithfully furnish and do everything therein required of the party, on his part to be kept and performed, and shall also pay for all labor performed or furnished, and for all materials used in the carrying out of said contract, then this obligation shall become and be null and void; otherwise it shall be and remain in full force and virtue."

The master further finds that the city by virtue of Article 6 of the contract, withheld from Long fifteen per cent of the sums which became due him each month as the work progressed, $19,177.33; that this sum and the bond for $31,250 constitute the security which the officers or agents who contracted in behalf of the city provided for the payment by the contractor and his subcontractors for labor performed or furnished and for materials used in the construction of the building; that the architect appointed to supervise the work was Joseph McGinniss, and his assistant was John M. Gray; and that the trustees of the Public Library were designated in the contract as the "Officers" who were authorized to represent the city, which was designated as the owner. The general contractor, Long, shortly after the date of the execution of the contract, began the performance of the work, and in the course thereof made subcontracts for various parts of the work. Long became involved in financial difficulties

and did not complete the work. He abandoned it at some time between the first and twenty-first of December, 1917. On December 21, 1917, the architect notified the trustees of the Public Library, in writing, that the general contractor, Long, had abandoned the work and advised them to proceed under Article 5 of the contract; and on the same date the trustees of the Public Library voted to proceed in accordance with that recommendation.

Article 5 of the contract reads as follows: "If the Contractor at any time is not carrying on the work to the satisfaction of the Architect or Officer, or is not observing any of the provisions of the contract, or has abandoned the work, or become insolvent or assigned his property, the City acting by the Officer and at his discretion, may, with or without notice to the Contractor, or advertising for doing the work, and by contract, day labor or otherwise, use any materials, implements or machinery on or about the work or otherwise, and do any part of the work which the Contractor has failed to do, or replace any part not done to the satisfaction of the Architect or Officer, or take possession of the work and complete the same."

The city, acting by the "Officer," the trustees of the Public Library corporation, took possession and control of the work and proceeded to have it completed. The subcontractors whose work was unfinished at the time of the abandonment of the contract by Long were ordered by the city to complete their work. On February 1, 1918, the architect notified the National Surety Company that he had been authorized by the trustees of the Public Library to finish the work and charge it up to the balance due to Long.

Under articles 4 and 7 the architect is authorized to determine various matters including the date of the completion of the work, and the contractor is bound thereby, subject to an appeal to the "Officer," trustees of the Public Library, whose decision shall be final and binding. The architect was in charge of the work on the building until June of 1918, and he had his assistant take charge of it after that time. Shortly before September 6, 1918, the assistant made an investigation to determine what work was unfinished. He saw the various men in charge and heard their reports. He notified the subcontractors to finish before the next meeting of the trustees. By September 6, 1918, all the work required by the plans and specifications was completed in accord-

ance therewith, except some windows that had been broken, some leaks that had been found remaining to be attended to, and some minor repairs which were needed. The architect received a report on the condition of the work from his assistant, in which the latter recommended that the building be accepted. An estimate for final payment under the contract with Long was made by the assistant, dated September 6, 1918, which was certified to by the assistant who signed for and with the knowledge of the architect. On the same day the trustees of the Public Library met, and "Voted that on the advice of the Assistant Corporation Counsel and in accordance with the recommendation of the architect the building be accepted with the reservation of a sum amply sufficient to provide for the completion of all unfinished items to the satisfaction of the Librarian."

The master specifically finds "There was testimony intended to show that the building was practically complete at a date long before September 6, 1918." He further finds, in relation to the question raised as to the date of the actual completion of the contract, that on November 4 and 5 a change was made from the chains to cables which had been put in prior to September 6, 1918, in connection with the doors of the book lifts and which had not worked to the satisfaction of the architect. Either chains or cables would have met the requirements of the contract and specifications, but the architect preferred cables and permitted chains to be installed originally because it was then impossible to procure cables. The architect notified the contractor's foreman to put in cables when he could get them. No addition or deduction was made on account of the change as the cost was included in the charge that was made when the chains were installed.

The total amount due from the city under the contract with Long up to September 6, 1918, the date of the completion of the building, was $127,752.04. This is the amount certified by the architect in the estimate for final payment, dated September 6, 1918. It is the amount of the contract, $125,000, plus items added, or extras, $4,537.04, and minus items omitted, $1,785. Of the total amount due, $127,752.04, there was paid Long $110,197.88 and the amount received as of September 6, 1918, was $17,554.16. Subsequently, on December 14, 1918, the city allowed an increase of $1,646.07 for the same items of addition, or extras, for which

$4,537.04 had previously been allowed. The additions to the contract, or extras, to the amount of $4,537.04, were ordered by the architect orally from time to time, and on September 5, 1918, upon the completion of the whole work, an order for said extras was made in writing by the architect and signed by the president of the trustees of the Public Library on September 9, 1918, and by the mayor on September 13, 1918. The other extras, amounting to $1,646.07 were ordered by the architect orally from time to time, but there was no evidence of any written order of the architect or approval in writing by the trustees or by the mayor.

The manner in which orders for extras should be made and approved was provided for in articles 2 and 3 of the contract, which read as follows:

"Article 2. The Contractor shall do the work, and do it in the manner set forth in the specifications of the contract, except that the City, by order in writing of the Architect approved in writing by the Officer, and by the Mayor, from time to time given to the Contractor, or his foreman, may change, increase or take away any part of the work, or change the specifications, plans, drawings, form or materials thereof, or require the Contractor to hasten the work or to furnish any extra materials or extra labor relating ·thereto and the Contractor shall conform to the orders. And no change, whether involving a change in the contract sum or not, shall be allowed unless by written order as herein set forth.

"Article 3. The architect with the written approval of the Officer shall determine any extension of time to be allowed, and the amount to be added to or deducted from the contract sum on account of any change made under orders as set forth in Article 2, and such amount shall, when possible, be noted in such order, but may, together with any extension of time, be determined at a later date, in which case a supplemental order, including the extension of time and the amount, shall be issued for the work. No claim shall be allowed to the Contractor on account of anything furnished or done in addition to the contract, except under written orders as aforesaid."

St. 1890, c. 418, relating to officers and departments in the city ·of Boston, provides in § 6, in regard to contracts accompanied by a bond or deposit, as follows: "All such contracts shall be accompanied by a suitable bond or deposit of money or other

security for the faithful performance of such contracts, and such bonds or other security shall be deposited with the city auditor until the contract has been carried out in all respects; and no such contract shall be altered except by a written agreement of the contractor, the sureties on his or their bond, and the officer or board making the contract, with the approval of the mayor affixed thereto."

As bearing upon the rights and obligation of the surety on the bond as they may be held to be affected by the manner in which the extras amounting to $6,183.07 were ordered and approved, the master finds "that no notice was given to the National Surety Company of any additions to the contract, or extras, or of any other changes, by the contractor Long or by any one in his behalf, by the Trustees of the Public Library, by the architect, or by any one representing the city."

The National Surety Company, defendant, contends that the bill should be dismissed as to it, because in violation of St. 1890, c. 418, § 6, the contract secured by the bond to which it was surety was altered without its written agreement to the manner in which the extras were ordered and approved by the city and the contractor, and after the work was abandoned by the contractor, by the city itself which had taken possession to complete the work under Article 5 of the contract. We do not consider whether the contention of the surety is right or whether its alleged defence under the St. of 1890 is overcome by an estoppel to deny the right of the direct contracting parties to do and perform everything required or permitted to be done by the terms of the contract, which by reference is incorporated in the bond, and being there is the measure of the rights and obligations of all parties to that bond; because, irrespective of any contract or statute which is designed to insure the faithful performance of contractual obligations in general, the intent of the Legislature, as shown by St. 1878, c. 209, St. 1904, c. 349, and St. 1909, c. 514, § 23, is unmistakable to secure and protect against all hazards other than that of the wilful default of persons furnishing materials or labor for public works. And in this regard it is entirely immaterial whether a bond for the faithful performance of the principal contract be taken or required. In *Equitable Surety Co.* v. *McMillan*, 234 U. S. 448, 454, it was said by Pitney, J., when

construing a statute of the United States, U. S. St. 1899, c. 218; 30 U. S. Sts. at Large 906, which in essential respects is similar to St. 1909, c. 514, § 23: "the obligation has a dual aspect, it being given, in the first place, to secure to the Government the faithful performance of all obligations which a contractor may assume toward it; and, in the second place, to protect third persons from whom the contractor may obtain materials or labor; and that these two agreements are as distinct as if contained in separate instruments." It was held in *United States* v. *National Surety Co.* 92 Fed. Rep. 549, 551, and adopted as the law by Pitney, J., in the case cited, *supra*, "that the sureties in such a bond could not claim exemption from liability to persons who had supplied labor or materials to their principal, to enable him to execute his contract with the United States, simply because the Government and the contractor, without the surety's knowledge, had made changes in the contract subsequent to the execution of the bond, the changes being such as did not alter the general character of the work contemplated by the contract or the general character of the materials necessary for its execution." In the case at bar there are no facts to prove or warrant an inference that the changes in the contract, the extra work, was outside the character of the work contemplated by the contract or the general character of the materials necessary for its execution. And the inference to the contrary is strong.

It is next contended by the surety company that the mayor of the city of Boston was an officer to contract for the public within the meaning of the statute (St. 1909, c. 514, § 23) and that a sworn statement must be filed with the mayor to enable a claimant to recover under the statute. We are of opinion the mayor was not an officer or agent who contracted in behalf of the city of Boston in execution of the contract in question. The trustees of the Public Library, a corporation, and a department of the city of Boston, executed that contract in obedience to and with the authority of St. 1890, c. 418, § 4, which so far as it is material to the question at issue reads: "Every officer or board in charge of a department in said city, when authorized to erect a new building or to make structural changes therein, shall make contracts therefor, not exceeding five, each contract to be subject to the approval of the mayor." Section 6 so far as it is material to the

issue provides: "All contracts made by any department of the city of Boston shall, when the amount involved is two thousand dollars or more, be in writing, and no such contract shall be deemed to have been made or executed until the approval of the mayor in writing is affixed thereto." The above quotations make it plain that the only authority conferred by the statute on the mayor of Boston is that of approval or disapproval of a contract which has been made or executed by the officer or board in charge of a department subject to the approval of the mayor. *Simpson v. Marlborough*, 236 Mass. 210. It follows that the sworn statement of claim which the statute requires shall be filed with the officer or agent who contracts in behalf of any county, city or town, in the case of the city of Boston must be filed with the "officer or board in charge of a department in said city, when authorized to erect a new building or to make structural changes therein." St. 1890, c. 418, § 4. It also follows, in the case of the city of Boston, that the filing of a sworn statement of claim with the mayor alone is not a performance of the condition which the statute requires shall be performed as a condition precedent to the enjoyment of the right conferred.

In view of the fact that the reported evidence warranted if it did not require the finding of the master, that the work was completed on September 6, 1918, the occasion does not now arise for a determination of the question whether, in favor of the rights of labor and material men intended to be secured to them by the statute, the point of time which marks the completion of the work and the beginning of the limitation of time within which the statement of claim must be filed, is a time which may be determined by the contract, or is that time which, upon all the evidence, is the time in fact when the work was completed.

The surety company further contends that interest should be allowed on the several claims only from the date of the filing of the several intervening petitions. The master does not find and the facts reported do not warrant the inference that any intervenor had a legal right to interest on his claim because of any provision for such in his contract or because on demand payment of his claim was refused, his debt being then due and payable. In these circumstances it is plain the rule as to interest which obtains under the mechanic's lien law governs by analogy, and interest on the

claims as allowed should run from the filing of intervening petitions and not from the filing of the sworn statements of claim. *Kennedy* v. *Commonwealth*, 182 Mass. 480. *Barstow* v. *Robinson*, 2 Allen, 605, 609. *Johnson* v. *Boudry*, 116 Mass. 196. *Young* v. *The Orpheus*, 119 Mass. 179. *McDonald* v. *The Nimbus*, 137 Mass. 360, 365.

The statute is satisfied if an adequate bond be taken, if other adequate security be taken, or in the discretion of the officer or agent, if both bond and other security be taken. *Friedman* v. *County of Hampden*, 204 Mass. 494, 512. It follows that the general claims have priority over the assignment to the Merchants' National Bank of Worcester of balances due to Long on contracts with the city of Boston, city of Buffalo, and State of New York. *Friedman* v. *County of Hampden, supra.*

The master finds that a note of $1,500 was given the Worcester Ornamental Iron Works October 1, 1917, which was payable December 1, 1917, and that Long did not pay the note when due. To the contention of the payee that the note was not given or accepted in payment, the master finds upon a consideration of all the evidence "as a conclusion of fact" that the plaintiff accepted the note as a payment on account. Having in mind the fact that the master who heard the testimony and saw the witnesses and the judge of the Superior Court agree, we have carefully examined the reported facts in the light of the brief of counsel and conclude that the findings of the master cannot be set aside as clearly wrong. *Goodell* v. *Goodell*, 173 Mass. 140, 146. *Willets* v. *Langhaar*, 212 Mass. 573, 576.

We think the requirements of the statute (St. 1909, c. 514, § 23) in relation to the filing of sworn statements of claim, in the case at bar were met and fulfilled by the mailing of letters, postage prepaid, addressed to the trustees of the Public Library, containing sworn statements of claim, provided such statements were actually received by such trustees; as it was in law performed by the delivery of letters containing sworn statements of claim, addressed to the trustees of the Public Library, to the clerk of the corporation known as the Trustees of the Public Library of the City of Boston. *Tower* v. *Miller*, 211 Mass. 113. *Powers Regulator Co.* v. *Taylor*, 225 Mass. 292, 298. *Hunter* v. *Caldwell*, 10 Q. B. 69, 80, 81.

The master's report as modified by this opinion should be confirmed. It results that the claim of the petitioner should be allowed for $4,768 with interest from the filing of its petition, with costs.

That the claim of Joseph P. O'Connell should be allowed for $1,209.93 with interest from the filing of his petition.

That the claim of the Standard Plate Glass Company should be allowed for $86.75 with interest from the filing of the petition.

That the claim of Elbridge A. Bullard should be allowed for $400 with interest from the filing of his petition.

That the claim of H. W. Johns-Manville Company should be allowed for $302.53 with interest from the filing of the petition.

That the claim of the New England Structural Company should be allowed for $4,228.84 with interest from the filing of the petition.

That the claim of W. A. Murtfeldt Company should be allowed for $115 with interest from the filing of the petition.

That the claim of Parry Brick Company should be allowed for $26 with interest from the filing of the petition.

That the claim of Pittsburgh Plate Glass Company should be allowed for $643.50 with interest from the filing of the petition.

That the claim of Smith-Green Company should be allowed for $2,199.30 with interest from the filing of the petition.

That the claim of Denholm and McKay Company should be allowed for $144.57 with interest from the filing of the petition.

That the claim of Waldo Brothers, Inc., should be allowed for $1,607.41 with interest from the filing of the petition.

That the claim of Harold L. Bond Company should be allowed for $181.28 with interest from the filing of the petition.

That the claim of Henry D. Temple Company should be allowed for $1,841.90 with interest from the filing of the petition.

That the claim of Hugh Nawn Contracting Company should be allowed for $455.79 with interest from the filing of the petition.

That the claim of John T. Scully Foundation Company should be allowed for $354.22 with interest from the filing of the petition.

That the claim of Concrete Steel Products Company should be allowed for $575.03 with interest from the filing of the petition.

That the claim of L. Sonneborn Sons, Inc., should be allowed for $203 with interest from the filing of the petition.

That the claim of T. J. Flynn Metal Works, Inc., should be allowed for $2,042.15 with interest from the filing of the petition.

That the claim of Frank E. Tingley should be allowed for $1,643.71 with interest from the filing of the petition.

That the claim of American Luxfer Prism Company should be allowed for $169.50 with interest from the filing of the petition.

That the claim of Daniels and Blomquist Company should be allowed for $1,100 with interest from the filing of the petition.

That the claim of Coburn Trolley Track Manufacturing Company should be allowed for $2,092.40 with interest from the filing of the petition.

That the claim of William H. Wood Lumber Company should be allowed for $305.70 with interest from the filing of the petition.

That the claim of Worcester Ornamental Iron Works should be allowed for $2,005.59 with interest from the filing of the petition.

That the claim of Merchants' National Bank of Worcester is not good against the fund before all other claims are paid.

Each of the above claims should be allowed with costs in this court.

The claims of Moulton and Holmes, Burditt and Williams Company, Victoria White Granite Company, Wellington-Wild Coal Company, Wadsworth, Howland and Company, Inc., Elevator Supply Company, William N. Stark, Snow Iron Works, William W. Field and Son, Inc., and William B. Reardon Company are disallowed on the fund, as above defined, for the failure to prove claims which entitled the several intervenors to have the benefit of the act, or because of the failure of such intervenors to give the required notice of such claims, in the manner and form required by the statute, but without prejudice to any other relief at law or in equity as they may be advised.

*Decree accordingly.*