J. Alfred Dolben & others *vs.* Duncan Construction Company & others.

Suffolk.    March 4, 16, 1931. — June 26, 1931.

Present: Rugg, C.J., Crosby, Pierce, Wait, & Sanderson, JJ.

*Bond,* Public work.    *Surety.    Assignment.    Contract,* Construction, Performance and breach, Building contract.    *Waiver.*

A bond, furnished to a city by a contractor in compliance with the provisions of a contract in 1926 between the contractor and the city for the erection of a public building, was upon the conditions that the contractor would faithfully perform the contract and satisfy all claims and demands incurred for the same, would fully indemnify and save harmless the city from all costs and damages which it might suffer by reason of the contractor's failure so to do, would fully reimburse and pay the city all outlays and expense which the city might incur in making good any default and would pay all persons who had contracts directly with the contractor for labor and materials. The bond contained a provision limiting the time under which an action could be brought upon it. The contract also provided that the city might retain from the monthly payments to the contractor a percentage of the value of labor and materials incorporated in the work and of materials stored at the site during the preceding month; and that final payment should become due sixty-three days after substantial completion of the work provided it be completed and the contract fully performed. *Held,* that conclusions were proper

(1) That the bond, while conditioned on the performance of the contract by the contractor, also was obtained as security for payment by the contractor and subcontractors for labor performed or furnished and for materials used in the construction of the building, as required by G. L. c. 149, § 29;

(2) That the bond was the sole security therefor;

(3) That the provisions in the contract for the retention of money by the city were for the city's own protection and not to provide security under the statute.

A provision in a contract between said contractor and a subcontractor, that the subcontractor waived and released all lien or right of lien then existing or that might thereafter arise for work or labor performed or material furnished under the contract under any lien laws upon the building, the land upon which it was situated, and upon any money or moneys due or to become due from any person or persons to the contractor, did not constitute a waiver by the subcontractor of his security for labor and materials under the bond.

After said contractor had abandoned his contract with the city and had refused to complete the building, a further provision in his contract with the subcontractor, that he might retain from the monthly payments to the subcontractor twenty per cent of the value of all work done and material furnished until the time for final payment, stated to be within sixty-one days after the acceptance of the building, no longer was binding upon the subcontractor; and the surety on the bond was not entitled to have a claim filed thereunder by the subcontractor reduced twenty per cent of its face value on the ground that it was filed prematurely to that extent.

The bond above described constituted security for proper claims of laborers and materialmen under contracts with subcontractors as well as those with the contractor.

A corporation received an order to instal certain materials in the building above described. Materials to the value of $3,000 were installed up to June 12. The contractor abandoned the contract August 17. Thereafter, upon an order of the city, the corporation installed the remainder of the materials and received a check from the city for such remainder. The installation was completed August 30. The corporation filed a sworn claim under G. L. c. 149, § 29, on September 23. In a suit in equity to enforce the bond, it was held, that the corporation was entitled to treat August 30 as the date from which to compute the time within which its claim must be filed; and that it was proper to allow its claim in the sum of $3,000.

It was proper in the suit in equity above described to allow a claim for the installation of materials more than sixty days previous to the filing of the sworn claim therefor under the statute, where the claimant, within such period, in good faith made certain changes in the installation reasonably necessary in order to make a good job.

An assigned claim properly might be prosecuted by the assignee in the name of the assignor in the suit in equity above described, and the amount due thereon ordered paid to the assignee.

Cinders used as filling in the granolithic walks and under the loam of the lawn of the building above described properly could be found to be reasonably necessary for the proper construction thereof; and a claim for such cinders was secured by the bond.

The contract above described between the contractor and the city further provided that, upon certificate by the architect that refusal, neglect or failure by the contractor with respect to the work was sufficient ground to terminate the contractor's employment, and that, upon notice by the city, the city might terminate the employment, enter upon the premises and take possession of all materials, tools, and appliances thereon for the purpose of completing the work included under the contract and might employ any other person to finish it; in which event the contractor should not be entitled to receive any further payment under the contract until the work should be finished, at which time, if the unpaid balance of the amount to be paid under the contract should exceed the expense incurred by the city in finishing the work, such excess should be paid by the city to the contractor, but if such expense should exceed such unpaid balance,

the contractor should pay the difference to the city. At about the time the contract was executed, the contractor assigned to the surety on the bond all money to become due from the city; and thereafter made a similar assignment to a bank. The contractor abandoned the work before it was completed. There was no certificate by the architect nor notice by the city as provided by the contract. The surety on the bond executed a writing to the effect that any action which the city might take to complete the work by using the employees of the contractor should be without prejudice to the city's rights against any one. The city's representatives voted to issue requisitions through the city's purchasing agent for the materials required for the work and to deduct the cost thereof from the contract price. The architect sent to all subcontractors letters stating that the city would complete the building, handle all accounts, and carry on the work as though it were the contractor. The city took possession of the work and materials then upon the premises, employed the superintendent and workmen who had previously been working for the contractor and undertook the completion of the work. Upon completion, the unpaid balance of the amount to be paid under the contract exceeded all expense incurred by the city by about $33,000.
*Held*, that

(1) The provision in the contract for termination of the contractor's employment was optional with the city and for its sole benefit; and it was applicable only in case the city should terminate the employment upon the conditions and in the manner specified;

(2) Said provision was not applicable where the contractor abandoned the work under the contract; and in such a situation an intention to complete the contract for the benefit of the contractor would not be inferred unless made clearly to appear;

(3) In the circumstances, the action by the city in completing the work could not rightly be said to have been taken under said provision of the contract;

(4) In the circumstances, by abandoning the work the contractor lost all right to recover from the city any sums which otherwise might have been due him under the contract; and the city was not obliged to pay either to the bank or to the surety, assignees of the contractor, any part of the $33,000 balance in its hands.

BILL IN EQUITY, filed in the Superior Court on October 31, 1927.

Certain persons and corporations were permitted to intervene. The pleadings and material facts found by a master, to whom the suit was referred, are described in the opinion. The contract between the city of Medford and Duncan Construction Company was dated June 14, 1926. The suit thereafter was heard by *Weed*, J., who denied motions to recommit and a motion by the defendant city of

Medford for a rehearing, and ordered the entry of an interlocutory decree confirming the master's report and supplemental report, and a final decree. A final decree accordingly was entered, of which certain paragraphs were as follows:

"8. That the defendant city of Medford upon the abandonment of the work by the defendant Duncan Construction Company proceeded with the completion of the building in accordance with the terms of the contract, and that upon its completion the unpaid balance of the amount to be paid under said contract exceeded the expense incurred by the city in finishing the work and all damages suffered by the city because of deviations from the specifications, defective work, delay in completion and failure to furnish guaranty bonds and insurance, by the sum of $33,335.34.

"9. That at the time that the defendant New Amsterdam Casualty Company filed its cross bill the defendant city of Medford owed the defendant Duncan Construction Company in respect of said contract the sum of $33,335.34.

"10. That the defendant New Amsterdam Casualty Company by virtue of its assignment from the Duncan Construction Company is entitled to be paid by the city of Medford the sum of $33,335.34 and interest. . . .

"11. That the defendant New Amsterdam Casualty Company having amended its cross bill with a view to having its rights to said sum of $33,335.34 and interest . . . established and said sum retained and applied by the city, so far as it will go, in payment of what is due the plaintiff and other claimants . . . the defendant New Amsterdam Casualty Company shall pay the city for the plaintiff and said other claimants only such amount of money, in addition to said sum of $33,335.34 and interest, as is needed to pay the plaintiff and other claimants what is due them in full together with interest and the plaintiff's costs as aforesaid.

"12. In view of the said amendment by the defendant New Amsterdam Casualty Company the intervening petition of the Manufacturers National Bank is dismissed.

"13. It is further ordered, adjudged and decreed that

the defendant New Amsterdam Casualty Company shall within thirty days after the entry of this decree pay to the defendant city of Medford the sum of $7,253.23, being the amount necessary to enable the defendant to pay to the plaintiff and intervening petitioners aforesaid the sums due them aggregating $40,588.57 with interest to the date of this decree and shall also. pay said defendant city of Medford interest on such total as may be paid from the date of this decree; and that thereupon the defendant city of Medford immediately distribute [to the plaintiff and intervening petitioners] the sums held by it as aforesaid . . . ."

Other portions of the final decree are described in the opinion. Manufacturers National Bank and New Amsterdam Casualty Company appealed from the final decree; and city of Medford appealed from the final decree and the decree denying its motion for a rehearing.

*C. B. Cross & J. S. McCann,* for the defendant city of Medford.

*E. W. Crawford,* for the defendant New Amsterdam Casualty Company and another.

*G. W. Cox,* for W. W. Hall & Sons and others.

*H. F. Wood,* for Richmond Fire Proof Door Company.

*D. T. Montague,* for Robert A. Burns, administrator.

*R. T. Parke,* for R. McMillen Company.

*J. A. Locke,* for New England Slate Blackboard Company.

*F. I. Rose,* (*F. M. Cohen* with him,) for Venezia and another.

*A. J. Zimmerman,* for Hub Steel & Iron Works, Inc., submitted a brief.

*H. Loewenberg & G. L. Harden,* for The Building Finishing Corporation and another, submitted a brief.

SANDERSON, J. The plaintiff brought this bill against the Duncan Construction Company, the city of Medford, and the New Amsterdam Casualty Company, hereinafter referred to, respectively, as the contractor, the city, and the surety, alleging that the contractor entered into a contract with the city for the construction of a school building and defaulted in performance of the contract. The plain-

tiff is a subcontractor and the bill is brought both in his own behalf and in behalf of all subcontractors who may join therein to obtain satisfaction for their claims from the money retained by the city under the contract and from the bond of the surety, the money and bond being alleged to be the security obtained under G. L. c. 149, § 29. Twenty-nine subcontractors and the Manufacturers National Bank of Lynn intervened, the latter alleging that it held an assignment from the contractor dated August 21, 1926, of the moneys due and to become due from the city. The surety filed a cross bill against the city, alleging that it held an assignment from the contractor dated on or about June 15, 1926, of all moneys due and to become due from the city. The case was referred to a master and the interlocutory and final decrees were based upon his report, certain exhibits and an agreement concerning one of them. The court entered a decree disallowing the claims of certain intervenors and allowing the claims of the petitioner and other subcontractors in the total amount of $40,588.57 with interest; holding that the bond furnished by the contractor and the surety was the sole security obtained by the city for the payment of the subcontractors' claims and that the building was completed by the city in accordance with the terms of the contract; and adjudging that at the time the surety filed its cross bill the city owed the surety, as assignee of the contractor in respect to the contract, the sum of $33,335.34. The decree ordered that the city apply this money in satisfaction of the subcontractors' claims, the additional funds necessary for the purpose to be furnished by the surety. The intervening petition of the Manufacturers National Bank was dismissed. From this decree the city, the surety and the bank appealed.

G. L. c. 149, § 29, required the officers contracting in behalf of the city to obtain security by bond or otherwise for the payment by the contractor and subcontractors for labor performed or furnished and materials used in the construction of the building. One of the contract documents referred to in the contract contained a provision that the contractor

should furnish a satisfactory surety bond in an amount equal to fifty per cent of the contract price for the payment of all labor performed or furnished and all materials used in the fulfillment of the contract, and for the faithful performance of all the terms and conditions of the contract, and a form of bond accompanied the contract substantially like that later given. The bond furnished was upon condition that the contractor would faithfully perform the contract on its part and satisfy all claims and demands incurred for the same and would fully indemnify and save harmless the city from all costs and damages which it might suffer by reason of the contractor's failure so to do, and would fully reimburse and pay the city all outlays and expense which the city might incur in making good any default and would pay all persons who had contracts directly with the contractor for labor and materials. This bond given in compliance with the contract was in terms broad enough to meet the statutory requirements, and the master found that it was intended by all parties to be security taken by the city under the statute. The trial judge was right in his conclusion that the bond while conditioned on the performance of the contract was also obtained as security for payment by the contractor and subcontractors for labor performed or furnished and for materials used in the construction of the building, as provided by statute. See *J. H. McNamara, Inc.* v. *McGuire*, 254 Mass. 589; *A. L. Smith Iron Works* v. *Maryland Casualty Co.* 275 Mass. 74. Neither the provision in the bond limiting the term within which an action may be brought on it nor its other provisions required the conclusion that it was not a bond under the statute. See now St. 1929, c. 110.

By the contract the right was reserved in the city to retain from the monthly payments to the contractor a percentage of the value of labor and materials incorporated in the work and of materials stored at the site during the preceding month. Final payment was to become due sixty-three days after substantial completion of the work provided it be completed and the contract fully performed. The city having obtained security by bond was not required to furnish other

and additional security for payment by contractors and subcontractors for labor and materials. *George H. Sampson Co.* v. *Commonwealth,* 208 Mass. 372. *Hunter* v. *Boston,* 218 Mass. 535, 538. *McClintic-Marshall Co.* v. *New Bedford,* 239 Mass. 216. See *J. H. McNamara, Inc.* v. *McGuire,* 254 Mass. 589.

The bond was given to afford protection to laborers and materialmen as well as to the owner. *Equitable Surety Co.* v. *McMillen,* 234 U. S. 448, 454. In *Hunter* v. *Boston,* 218 Mass. 535, the bond purported to be security only for the faithful furnishing of material and doing of the work required of the contractor by the contract, while the contract provided that the payments were to be retained to settle claims for materials or labor furnished where claims have been filed with the city by subcontractors.

In *Otis Elevator Co.* v. *Long,* 238 Mass. 257, there was a finding by the master that both the money retained by the city and the bond were security, but in the case at bar there is no such finding as to the money retained by the city. The provisions for the retention of money by the city to which reference has been made must be held upon this record to be for the city's own protection and not to provide security for labor and materials furnished, and the conclusion of the trial judge that the bond was the sole security under G. L. c. 149, § 29, for payment for labor furnished and materials used in the construction of the building was right.

It is contended by the surety that, because of two clauses numbered 9 and 18 in the printed parts of several of the contracts between the contractor and subcontractors who had filed claims, these claimants have waived their equitable liens or, if not, that their claims were prematurely filed. Clause number 9 in substance provided that these contractors waived and released all lien or right of lien then existing or that might thereafter arise for work or labor performed or material furnished under this contract, under any lien laws upon the building, the land upon which the same is situated, and upon any money or moneys due or to become due from any person or persons to the contractor,

and agreed to furnish a good and sufficient waiver of lien on the premises from every person or corporation furnishing labor or material for the premises under the subcontractor.

The judge ruled that the waiver expressed in this clause applied only to such lien, if any, as the subcontractor might thereafter have upon any money or moneys due or to become due from the city to the principal contractor. If it be assumed that this clause has a proper place in a contract for the construction of a public building to which the lien laws do not apply, it cannot affect the rights of the subcontractors upon the facts in this case because the waiver by its terms is expressly confined to the money that is due or to become due to the contractor from the city.

Clause 18 provided for the retention by the contractor from the monthly payments of twenty per cent of the value of all work done and material furnished until the time for final payment, which is stated in that clause to be within sixty-one days after the acceptance of the building. The surety contends that because of this clause certain claims were prematurely filed and should be reduced twenty per cent of their face value. Under the statute claims must be filed within sixty days after the claimant ceases to perform labor or to furnish labor or materials. If the construction for which the surety contends were adopted it would be impossible for a claimant whose contract contains clause 18 to obtain the benefit of the security, at least as to a part of his claim, notwithstanding the fact that the contractor had broken his part of the agreement by abandoning the work and refusing to complete the building. The surety cannot successfully contend that this provision continued to be binding on a subcontractor after the contractor abandoned the contract.

All claims presented, with the exception of a part of the claim of W. W. Hall and Sons, were based upon contracts made directly with the contractor. The claim of this intervenor was based in part upon a contract made with a subcontractor. For reasons already stated the contention of the surety that the bond does not secure a claim based upon a contract with a subcontractor is not tenable.

The New England Slate Blackboard Company contracted with the Duncan Construction Company to install blackboards in the school for $3,400. A part of this order of the value of $3,000 was supplied between May 9 and June 12, 1927, and on July 1 it sent a bill to the contractor for that amount, which was not paid. After the abandonment of the contract this claimant received from the architect a letter similar to that sent to all subcontractors, stating that the city would complete the building, handle all accounts, and carry on the work as though it were the contractor. The installation of the blackboards was completed on August 30, 1927, with the expectation on the part of the claimant that the city would pay it the difference between the contract price and the value of the work done before the contract was abandoned. On the day after it completed the work of installing the boards it received from the city an order to furnish and install all slate blackboards necessary to complete the installation. The sworn statement of the intervenor was filed on September 23, 1927. The city has sent its check representing the amount of labor furnished in installing the blackboards after the abandonment of the contract by the contractor. This check is still held by the claimant and it has notified the city that the check is temporarily held until permission should be received to accept it in reduction of the claim filed, without jeopardizing its claim for the balance. This petitioner's claim was allowed for $3,000 and interest. In *Bay State Dredging & Contracting Co.* v. *W. H. Ellis & Son Co.* 235 Mass. 263, the court said, at page 268, that the time within which a claim may be filed is not affected by the fact that the work is not completed by the original contractor. Work done to remedy defects may be considered in deciding whether a claim is filed in time. *Winer* v. *Rosen*, 231 Mass. 418, 422. "The statute is remedial and intended to protect those who lawfully enhance the value of land by the expenditure upon it of material or labor." *Shaughnessy* v. *Isenberg*, 213 Mass. 159, 162. The purpose of the statute was "to secure and protect against all hazards other than that of the wilful default of persons furnishing materials or labor for public works." *Otis Elevator Co.* v. *Long*, 238 Mass.

257, 264. We are of opinion that, upon the facts of this case, the claimant was not precluded from treating August 30, 1927, when the last work it originally contracted to do was finished, as the date from which to compute the time within which its claim must be filed, and that the surety has no ground to complain of the allowance of the claim for the amount due for labor and materials at the time the contract was abandoned by the contractor.

It appears from the master's supplemental report that the claim of the Richmond Fireproof Door Company was mailed on the twenty-seventh day of September, 1927, and received and filed by the clerk of the city on September 28. By its contract this claimant was to furnish and work on kalamin and tinclad doors and standard fire door hardware for an undivided lump sum. The work on the doors was finished July 29, 1927, but on July 30 one of its workmen inspected them, oiled the hinges and eased the working of the doors so that they would close and open accurately and without difficulty. This work was found to be reasonably necessary in order to make a good job and was done in good faith. In these circumstances the claim must be held to have been filed in time. *Thurston* v. *Blunt*, 216 Mass. 264. *See* v. *Kolodny*, 227 Mass. 446. *Winer* v. *Rosen*, 231 Mass. 418.

The Building Finishing company assigned its claim to Commercial Finance and Discount Company on June 21, 1927, and afterwards was adjudged a bankrupt. The claimant furnished and delivered material which was wrought into the building, up to August 18, 1927. Its statement of claim was filed with the city clerk September 8, 1927. The only contention of the surety concerning this matter is that the assignor filed the statement of claim without referring to the assignment. There is nothing in the record to indicate that the rights of the surety have been in any way prejudiced by the fact that proof was in the name of the assignor, and no error appears in the part of the decree ordering the amount due on this claim to be paid to the assignee of the claimant. An assignee may by statute sue in his own name but he may also sue in the name of the assignor. G. L. c. 231,

§ 5.   *Moore* v. *Spiegel,* 143 Mass. 413.   *Kelly* v. *Greany,* 216 Mass. 296.

Edward J. McHugh and Son used cinders as filling in the granolithic walks and under the loam of the lawn of the school. The surety contends that, while the plans indicate granolithic walks and also show that the lawn should be seeded, there is nothing to indicate that cinders were to be used under the lawn, and that the claim should be disallowed because it was an extra for which no provision was made and because the item was not certified by the architect. The master's report does not indicate whether it was so certified. We cannot say that there was error of law in allowing the claim. Inasmuch as the only issue concerning this claim as stated by the master is the question of law whether the material so used can be the subject of lien under the statute, it is apparent that so far as the claimant's rights depend upon questions of fact they have been decided in its favor. The cinders as used could be found to be reasonably necessary for the proper construction of the school, and upon such a finding the cost thereof would be provable against the statutory security, not as an extra but as a part of the principal contract. *Reid* v. *Berry,* 178 Mass. 260. *Friedman* v. *County of Hampden,* 204 Mass. 494, 511.

The International Casement Company had the subcontract for furnishing and installing casement windows. Its statement was filed with the city clerk on September 16, 1927, and the work so far as it was possible was completed on May 27, 1927, but because of the prosecution of the construction by other workmen additional work was required to put the casements in a satisfactory condition. Stone ornaments had been placed outside the windows which thereafter could not be fully opened without coming in contact with the ornaments. The windows had also been affected by the plastering, and the pivots, nails and other hardware had become distorted. This claimant was requested to correct these defects and, accordingly, on September 15 its workmen replaced the screws and hardware,

adjusted the nail plates and certain bars and put two stops on the adjuster plates to hold the windows at an angle and prevent them from hitting the ornaments on the outside of the building. This additional work was found to have been done in good faith and in an honest effort to complete the obligation of this claimant, and was not merely for the purpose of preserving the statutory lien. For reasons already stated in connection with the claim of the New England Slate Blackboard Company the claim should not be disallowed merely because the work was done after the contractor abandoned the work, even if it be assumed that it was done at the request of the city. We are of opinion that the work done for the purpose stated could be found reasonably to have been required to complete the original contract obligation assumed by this subcontractor and that there was no error of law in the allowance of the claim. *McLean* v. *Wiley*, 176 Mass. 233. *Thurston* v. *Blunt*, 216 Mass. 264. *See* v. *Kolodny*, 227 Mass. 446.

Upon being notified of the contractor's default which occurred on August 17, 1927, representatives of the city and of the surety held a conference and the surety signed and delivered to the city the following letter: "It is understood that any action the City or the Schoolhouse Building Commission, or any other proper municipal authority may take in completing the work of constructing the Milton F. Roberts Junior High School through the use of the organization of the Duncan Construction Co. or any part thereof or otherwise, shall be entirely without prejudice to any rights which said commission or the city may have against any one, and also without prejudice to any rights which the Duncan Construction Co., as principal, and the New Amsterdam Casualty Co., as surety, may have against the City of Medford or any one. The New Amsterdam Casualty Co., as surety, hereby waives any further notice to it requesting it to complete the work on said school and assents to the use of the organization, in whole or in part, of the Duncan Construction Co., which shall be without prejudice, as stated above."

At a regular meeting of the schoolhouse building com-

mission, held on August 22, 1927, the following vote was passed: "On motion seconded, it was voted, five voting in the affirmative, in view of the notice of intention not to complete the contract by the general contractor, Duncan Construction Company, on the Roberts School, and the Commission's action approving Change Orders Nos. 24, 25 and 27 General, it is deemed advisable to issue requisitions through the City Purchasing Agent for the materials required on the job making the necessary deduction in the Duncan contract price, and the Secretary is hereby directed to inform the Purchasing Agent to this effect and have requisitions issued by him for materials as required, and further that the City Auditor be notified of this action for his guidance."

The master found that thereafter the city took possession of the work and materials then upon the premises, employed the superintendent and workmen who had previously been working for the contractor and undertook the completion of the work. He made no other findings bearing on the action of the city with relation to the contract after August 17, 1927. By one of the provisions of the contract the city reserved the right to terminate the employment in certain specified cases of refusal or neglect on the part of the contractor in respect to the work, upon certificate of the architect and upon giving written notice; and, in such case, to provide any such labor or materials and deduct the cost thereof from any money then due or thereafter to become due to the contractor under the contract; and, if the architect should certify that such refusal, neglect or failure was sufficient ground for such action, the city should also be at liberty to terminate the employment of the contractor for the work and enter upon the premises and take possession of all materials, tools, and appliances thereon for the purpose of completing the work included under the contract, and to employ any such other person or persons to finish it. In case of such discontinuance of the employment, the contractor would not be entitled to receive any further payment under the contract until the work should be finished; but then, if the unpaid balance of the amount to be paid under the contract should exceed the expense incurred by the city in

finishing the work, such excess would be paid by the city to the contractor; but if such expense should exceed such unpaid balance, the contractor would pay the difference to the city.

The trial judge in his order for interlocutory and final decrees found and ruled upon the facts found by the master and the inferences of fact to be drawn therefrom that, whatever other rights the city may have had upon the contractor's abandonment of the work, the city elected to proceed as upon a termination of the contractor's employment, in the manner provided by the contract, by taking possession of the work and materials then upon the premises, by employing the superintendent and other employees of the contractor to finish the work, and by providing the material therefor. By the final decree it was determined that the unpaid balance of the amount to be paid under the contract exceeded the expense incurred by the city in finishing the work and all damages suffered by the city because of deviation from the specifications, defective work, delay in completion and failure to furnish guaranty bonds and insurance, by the sum of $33,335.34, and that at the time the cross bill of the surety was filed this sum was owed to the contractor by the city in respect of the contract, and the surety by virtue of the assignment to it by the contractor is entitled to that sum with interest from June 11, 1928.

The question whether the city completed the contract for the benefit of the contractor must be decided by us on the documentary evidence and findings of fact by the master, uninfluenced by the decision of the trial judge. *Brockton Olympia Realty Co.* v. *Lee*, 266 Mass. 550, 562. Upon the abandonment of the contract the contractor lost all right to recover from the owner any sums which otherwise might have been due it under the contract. *Smedley* v. *Walden*, 246 Mass. 393, 400. In this situation an intention to complete the contract for the benefit of the contractor would not be inferred unless made clearly to appear. *Bernz* v. *Marcus Sayre Co.* 52 N. J. Eq. 275. The provision as to termination is applicable only in case the owner terminates the employment upon the conditions and in the manner specified in the

contract. This right is optional with the city and is for its benefit and not for the benefit of the contractor. The provision is not applicable to the case where the contractor abandons the work under the contract and refuses thereafter to carry on any operations in performance of the same. The city was not the moving party in terminating the contract. Neither the architect's certificate nor the notice for which the contract provides was given; and there was no evidence that the city completed the contract as agent of the owner as in *Pease* v. *McQuillin,* 180 Mass. 135. The city, having obtained from the surety, which had rights by virtue of the assignment from the contractor, as well as obligations under the bond, the agreement that it might proceed to complete the building without prejudice to any of its rights, cannot be held to have prejudiced its rights nor did it assume obligations to the contractor or its assignee by undertaking to complete the building according to the plans and specifications referred to in the contract, or by employing men who had formerly worked for the contractor, or by making use of certain materials and tools left on the job by the contractor. With that agreement in the case, the letters of the architect, the votes of the commission representing the owner, and the various acts and communications of the parties representing the owner in completing the performance of the contract could not rightly be held to be a completion of the contract as upon a termination of the employment of the contractor under the contract, and we need not decide whether the acts and conduct of parties acting in behalf of the city could have been found to be a completion for the benefit of the contractor if the agreement had not been made with the surety before any of those acts were done. The city is under no obligation to pay the contractor or either of its assignees any part of the money in its hands, and the part of the decree holding that the city proceeded with the completion of the building in accordance with the terms of the contract and must account to the surety as assignee of the contractor for the unpaid balance in the hands of the city upon completion of the contract, and the orders for the payment of money based thereon must be reversed.

The contentions of the surety, as to certain items expended by the city for payrolls and for material and labor, and as to the allowance of a sum as provided in the contract for delay in completion of the building and a sum for services of the architect were important in this suit only in case the city should be held accountable to the surety for the money retained. Because of the conclusion that the city is not so accountable for any sum in its hands, the question whether the conclusions of the master and of the trial judge as to these items are right has become immaterial and will not be further considered.

The conclusion that the judge erred in finding and ruling that the contract was completed by the city for the benefit of the contractor makes necessary certain changes in the decree as follows: The paragraphs numbered 8, 9, 10 and 11 of the decree are struck out. Paragraph 12 is struck out and a paragraph is to be substituted therefor and numbered 8 ordering the intervening petition of the Manufacturers National Bank dismissed, without making reference to any amendment of the bill by the surety. The paragraph numbered 13 is to be numbered 9 and to be amended by striking out in the second and third lines the words "within thirty days after the entry of this decree," and substituting therefor the words "forthwith upon the entry of final decree after rescript," and by striking out from the third and fourth lines thereof the words "the sum of $7,253.23 being," and by changing the orders for payment of interest on the several principal sums named therein by computing it to the date of decree after rescript.

The paragraphs numbered 14, 15 and 16 are to bear respectively the numbers 10, 11 and 12.

When so amended the decree is affirmed with costs.

*Ordered accordingly.*